COMMONWEALTH *vs.* SAUL B. CAST.

Plymouth. March 5, 1990. - July 11, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Constitutional Law*, Search and seizure, Probable cause. *Search and Seizure*, Automobile, Container, Exigent circumstances, Probable cause. *Probable Cause.*

In a criminal case, the findings of the judge on the basis of the evidence presented at a hearing on a motion to suppress contraband seized after a warrantless search of a closed suitcase in the trunk of an automobile clearly established that the unnamed informant's tip relied on by police satisfied the probable cause requirements of art. 14 of the Massachusetts Declaration of Rights for the stop and search of the vehicle. [895-901]

In a criminal case, the evidence presented at a hearing on a motion to suppress contraband seized after a warrantless search of a closed suitcase in the trunk of an automobile established that there was not only probable cause for police to believe that cocaine would be found in the vehicle [901-903] but also exigent circumstances that excused the requirement of a warrant under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights [903-906].

Where police officers had probable cause and exigent circumstances to justify a warrantless stop and search of a motor vehicle for controlled substances, no further probable cause or exigent circumstances were needed, under either the Fourth Amendment to the United States Constitution, or art. 14 of the Massachusetts Declaration of Rights, to justify a search of any open or closed container in the vehicle capable of holding the contraband. [906-908]

INDICTMENT found and returned in the Superior Court Department on August 12, 1986.

A pretrial motion to suppress evidence was heard by *John D. Sheehan*, J., and the case was tried before *George N. Hurd, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John C. McBride* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, Saul B. Cast, was found guilty by a jury in the Superior Court of trafficking in over 200 grams of cocaine. He timely appealed from his conviction and the denial of his motion to suppress the cocaine seized by police officers in the July 31, 1986, warrantless search of a closed suitcase in the trunk of his rented automobile.[1] We transferred the case here on our own motion and now affirm.

The following facts are drawn from the findings of the motion judge. Several days before the defendant's arrest, Herbert Lemon, an agent of the Drug Enforcement Administration (DEA), met with an informant at a Brockton restaurant. Lemon had never seen the informant before, nor had this informant provided him with any "tips" in the past.

The informant told the DEA agent that he was "familiar with" one Saul Cast, living in Bridgeport, Connecticut, who could "move" large amounts of cocaine on very short notice and from whom the informant could arrange a shipment of cocaine to Massachusetts that same day. He provided some personal background information about the defendant, stating that Cast was a light-skinned native of Colombia who had anglicized his surname after becoming a United States citizen, was married to a woman originally from the Brockton area, drove a blue pickup truck, and was self-employed, possibly as a painter. He gave the DEA agent Cast's home telephone number. Finally, he told Lemon that, in conducting his cocaine business, Cast liked to use luxury cars and expensive hotels.

DEA agents in Hartford, Connecticut, thereupon verified that the telephone number given Agent Lemon by the informant was listed to Saul Cast at an address in Bridgeport.

---

[1] A single justice of the Appeals Court upheld the denial of the defendant's motion for stay of execution of sentence pending this appeal.

At that address they noticed a blue Ford pickup truck as well as a gray Oldsmobile passenger automobile in the driveway. The license plate numbers revealed that the pickup truck was registered to Saul Cast, and the automobile to an individual surnamed Castaneda. The agents were also able to confirm that the defendant was self-employed as a painter. Finally, a check of records at the office of the United States Immigration and Naturalization Service in Hartford turned up the facts that Saul Cast was a Colombian, had married a Massachusetts resident and, as a result, had been naturalized as a United States citizen the previous year, and had changed his name from Castaneda to Cast shortly thereafter.

At a subsequent meeting between Lemon and the informant it was agreed that the informant would contact Cast and arrange for him to deliver two kilos of cocaine to the Plymouth area on the evening of July 30, 1986.

Lemon then arranged with the Boston DEA office for surveillance of the defendant's Bridgeport home on the morning of July 30. The State police drug unit assigned to the Plymouth County district attorney's office was also alerted of the expected delivery that day, and the matter became a joint investigation of the two law enforcement agencies.

At approximately 4 P.M. on July 30, the defendant was observed entering a taxicab outside his home in Bridgeport, carrying a gray suitcase made of some fibrous cloth fabric. DEA agents followed the cab to an automobile rental center, where Cast placed his suitcase in the trunk of a new, white Lincoln with New York license plates.

The DEA agents followed the Lincoln for several hours, losing sight of it for several extended periods. The vehicle was last seen in the vicinity of the Merritt Parkway in Connecticut at about 6:30 P.M. Shortly thereafter, State troopers were stationed at various points along the major route of travel between the New Canaan and Plymouth areas and told to be on the lookout for the Lincoln.

An agent was also stationed at a hotel in Plymouth, where he advised employees that a man named Saul Cast, speaking with a strong Spanish accent, travelling from Connecticut,

might call that evening for a reservation, and that the agents and troopers were to be promptly notified if that occurred. Some time later, a hotel clerk reported to the agent that she had taken a call from a man with a heavy accent (which the judge found she could not identify), who gave his name as Richard Sawicki.[2]

At about 12:30 A.M. on July 31, 1986, a State trooper at the first stakeout along Interstate 495 saw the white Lincoln with the right New York license plates drive by. He alerted other officers and followed the automobile toward Plymouth to Route 44, where the defendant headed east. Once the officers were satisfied that the defendant was unaccompanied by any associated vehicles that might actually be "caddying" the drugs, he was stopped. Upon identifying him as Saul Cast, the officers searched the vehicle. The cocaine was discovered in a suitcase in the trunk of the vehicle. A credit card bearing the name of Richard Sawicki was found in his wallet.

The searches of Cast, his automobile, and the luggage in its trunk were executed without a warrant. The motion judge found that Sgt. Bruce Gordon of the State police reached a decision sometime after 10 P.M. to proceed with the surveillance operation without applying for a search warrant, because he believed the officers would have no probable cause

---

[2]The judge found that the call came at 10 P.M. and that the caller said he would arrive in about an hour and a half. At the motion hearing the hotel clerk said that she could not recall, but she had thought it came in between 9:30 and 10 P.M. or at least toward the end of her shift, which ran until 11 P.M. She was never asked how long the caller estimated it would be before he arrived. The only other witnesses at the hearing regarding these facts, agents Mieczy Swidwinski and Lemon, Sgt. Bruce Gordon, and Trooper Robert Friend, all testified that the call was received at the hotel at about 10 to 10:30 P.M., and that the caller stated he would be arriving at about 12 to 12:30 A.M.

In addition, the judge found that the hotel clerk told Agent Swidwinski that she was not sure of accent in the caller's voice. The hotel clerk had testified at the motion hearing that she simply could not recall. Agent Swidwinski and the troopers to whom the information was relayed all testified that the hotel clerk had identified the accent as Spanish, and that that detail, coupled with the Polish surname Sawicki, is what had aroused Swidwinski's suspicion.

to stop the defendant and search his Lincoln until they were able to verify that he was travelling alone and that he was headed for Plymouth. When and if these facts were in fact proven true, the motion judge found Sgt. Gordon concluded, there would be exigent circumstances justifying the warrantless automobile search.

The defendant advances a number of theories under which his rights to be free of unreasonable search and seizure under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights were violated by the warrantless search of his automobile and the suitcase. First, he argues that there was no probable cause for stopping him and searching his vehicle. Second, he contends that, even if there were probable cause, it extended only to the suitcase in the trunk and not to the entire vehicle, and so the automobile exception to the warrant requirement is inapplicable. Third, the defendant asserts that, even if probable cause extended to the whole vehicle, there were no exigent circumstances that made the automobile exception applicable to relieve the law enforcement officials of the obligation to get a search warrant. Finally, he argues that, even if the warrantless search of his car and the luggage in the trunk was lawful under the automobile exception to the Fourth Amendment's warrant requirement, the search of the suitcase was illegal under art. 14 and its greater measure of protection for unreasonable searches.

1. *Probable cause.* In order to have had probable cause to arrest and search Cast and his automobile, the State troopers in this case would have to have known of enough facts and circumstances "to warrant a person of reasonable caution in believing" the defendant was transporting cocaine in the Lincoln. *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 687 n.3 (1984). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Draper* v. *United States*, 358 U.S. 307, 313

(1959), quoting *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949). Thus, because in determining whether probable cause exists we are not concerned with guilt beyond a reasonable doubt, "[r]easonable inferences and common knowledge are appropriate considerations." *Commonwealth* v. *Alessio*, 377 Mass. 76, 82 (1979).

Where an unnamed informant's tip is relied on by law enforcement officers as supplying probable cause to arrest and to search, art. 14 requires that the information pass muster under the two-pronged standard set forth in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). That standard may be met in one of two ways. As a rule, the Commonwealth must demonstrate some of the underlying circumstances from which (a) the informant gleaned his information (the "basis of knowledge" test), and (b) the law enforcement officials could have concluded the informant was credible or reliable (the "veracity" test). *Commonwealth* v. *Robinson*, 403 Mass. 163, 164-165 (1988). However, an informant's detailed tip, plus independent police corroboration of those details, of the type that occurred in *Draper* v. *United States*, *supra*, can compensate for deficiencies in either or both prongs of the *Aguilar-Spinelli* standard, and thus satisfy the art. 14 probable cause requirement. *Commonwealth* v. *Robinson*, *supra* at 166. *Commonwealth* v. *Reddington*, 395 Mass. 315, 322 (1985). *Commonwealth* v. *Upton*, 394 Mass. 363, 375 (1985).

The motion judge concluded that, on the basis of facts he found, the officers had probable cause to stop and search Cast and his car under both methods for meeting *Aguilar-Spinelli*'s demands. That is, he ruled that the Commonwealth had proven that the informant's basis of knowledge was established by the facts inherent in the tip itself. Furthermore, he concluded that the Commonwealth had established the informant's veracity from the tip itself, in combination with *Draper*-style police corroboration which amply made up any deficiency. The defendant contends that the motion judge erred in reaching all these conclusions. We disagree.

The judge's findings of fact are binding in the absence of clear error, and we view with particular respect the conclusions of law which are based on them. *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985). *Commonwealth* v. *King*, 389 Mass. 233, 235 n.1 (1983). If the evidence is admissible and the facts found by the judge support the theory relied upon by this court, it is of no consequence whether the precise reasons assigned by the judge are accurate. *Commonwealth* v. *Signorine*, 404 Mass. 400, 403 n.1 (1989), and cases cited.

The judge's findings clearly establish that the law enforcement officers possessed enough information about the informant's basis of knowledge to satisfy this prong of the art. 14 probable cause requirement. The informant named the defendant, described his appearance, gave his phone number, knew of his national origin and citizenship status, how he had obtained that status as a result of marriage to a Massachusetts native, and described the anglicization of his name, his pickup truck, and his employment situation. Furthermore, the informant told the agents not only that the defendant had the ability to "move" substantial quantities of cocaine on short notice, but also that he generally used luxury automobiles and expensive hotels in conducting his business. From this level of detail, "[i]t could be inferred that the informant had direct knowledge [of the defendant and his criminal activities], based on personal observation and contacts which went materially beyond 'a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.'" *Commonwealth* v. *DiAntonio*, 8 Mass. App. Ct. 434, 439 (1979), quoting *Spinelli* v. *United States*, *supra* at 416. See *Commonwealth* v. *Robinson*, *supra* at 165.

Any deficiency in ascertaining the informant's basis of knowledge from the tip alone was adequately compensated for by the law enforcement officers' corroboration of these details. "The corroboration went far beyond . . . readily available information." *Commonwealth* v *Carrasco*, 405 Mass. 316, 322 (1989). After the informant's first meeting

with agent Lemon, the DEA agents in Hartford were able to verify every detail of the informant's tip regarding Cast's identity and personal life. In addition, the informant accurately predicted the appearance and expected behavior of the defendant on the night of his arrest, which the law enforcement officials corroborated. See *Commonwealth* v. *Robinson, supra* at 166 (informant described defendant and the train on which he would be arriving). Contrast *Commonwealth* v. *Borges*, 395 Mass. 788, 789 (1985) (informant did not indicate to police any expected behavior on defendant's part). Thus, when the troopers stopped Cast on Route 44, they had enough knowledge to conclude that the informant had been in personal contact with the defendant to arrange the drug transaction that night, and that his tip was most likely based on first-hand knowledge of the defendant and his operation. See *Commonwealth* v. *Gonzalez*, 403 Mass. 172, 175 (1988); *Commonwealth* v. *Avery*, 365 Mass. 59, 63 (1974).

With regard to the veracity prong of art. 14's requirements for probable cause, the motion judge found that the standard was met because the informant was known to agent Lemon; that he made a statement against his penal interest, not lightly made and thus indicating reliability; and that finally, any deficiencies in meeting the veracity requirement from the tip itself were shored up by the extensive independent investigation that corroborated the informant's statements and proved him reliable. The judge's conclusion that the tip included a statement against penal interest was erroneous, but his other conclusions and ultimate ruling on the police's knowledge of the informant's veracity were sound.

The informant's tip itself contained some indicia of reliability. Not only was the identity of the informant known to the DEA agents, who met with him twice in person, but also the informant gave agents his own telephone number, at which he was reached by Agent Lemon some six to ten times in regard to the investigation into the defendant's activities. See *Commonwealth* v. *Melendez, ante* 53, 58 n.4 (1990) (no indication that police knew informant's name or address or indeed would have been able to reach him); *Commonwealth*

v. *Upton, supra* at 377-378 (anonymous telephone call not enough under art. 14 to justify search); *Commonwealth* v. *Alessio,* 377 Mass. 76, 82 (1979) (anonymity of an inform- ant, not only to magistrate but to police as well, is one factor to weigh in determining informant's veracity). Furthermore, when asked if he had anything else to report to the agents, the informant named two individuals (as well as the particu- lar drugs in which they trafficked), both of whom Agent Lemon knew about, and knew to be under investigation for suspected drug dealing. See *Commonwealth* v. *Carrasco, supra* at 322 (informant's veracity bolstered by the fact that he identified as drug customers several individuals known to the police to be heroin dealers).

The independent law enforcement investigation and sur- veillance of the defendant, based on the informant's tip, shored up these inherent indications of his veracity. The DEA agents corroborated all the personal details the inform- ant told them about Cast. See *Commonwealth* v. *Parapar,* 404 Mass. 319, 323 (1989) (troopers verified certain state- ments informant made regarding defendant, such as his tele- phone number, location of the building in which defendant lived, as well as information about the defendant's runner's car and telephone number); *Commonwealth* v. *Blake,* 23 Mass. App. Ct. 456, 460 n.5 (1987) (trooper had been deal- ing with informant for a week, but had verified by records and observation at least some of the details informant had provided).

During a long day of surveillance, the police verified every other piece of information given them by the informant in regard to both the defendant's past mode of operation in car- rying out drug transactions and this particular transaction, which the informant had told Lemon he had personally set up with the defendant to take place at a hotel in Plymouth on the night of July 30. See *Commonwealth* v. *Duran,* 363 Mass. 229, 232 (1973) ("crucial to the establishment of probable cause was the personal verification by police of de- tails of information forwarded by the informer" about de- fendant and his arrival from a certain flight, carrying mari-

huana). This corroboration gave them logical reason to believe that the informant could be relied upon to be telling the truth about the remaining unverified portion — that Cast was transporting two kilograms of cocaine. *Draper* v. *United States, supra* at 313.

Nor were the law enforcement officials' observations in relation to the defendant during the July 30-31 surveillance limited to innocent details alone, as the defendant contends. Experienced Federal drug enforcement agency officials and State police troopers who, the motion judge found, had participated in numerous narcotics investigations, watched Cast rent an automobile for the trip they believed he was making to Plymouth, even though he owned two vehicles. The fact that the Lincoln was an expensive automobile corroborated the informant's tip regarding the defendant's preferred mode of transportation on drug trafficking trips. In addition, the mere fact that Cast was renting any automobile was in itself suspicious. It was in keeping with drug traffickers' practice of using rented vehicles rather than their own, in order to protect their anonymity if the police do become suspicious and run a license check, and in order to shield the vehicles they own from seizure and impoundment. Observations taking on special significance "to the trained eye of the officer," may be relied upon by an officer in making his or her assessment of the existence of probable cause. *Commonwealth* v. *Myers,* 16 Mass. App. Ct. 554, 557 (1983). *Commonwealth* v. *Alessio, supra* at 81.

We conclude that the officers' corroboration of virtually every detail of the informant's tip regarding the defendant and their observation of certain activities of Cast which they recognized as being suspicious during their lengthy surveillance of him on July 30-31, together with certain indicia of reliability in the tip itself, gave them enough knowledge to meet the veracity standard of art. 14. They were entitled to regard as reliable the informant's report that he had personally arranged with the defendant a drug transaction in which Cast would be transporting two kilograms of cocaine to Plymouth on the night of July 30.

Therefore, we hold the troopers had probable cause to arrest and search the defendant when they brought him to a stop along Route 44.

2. *Scope of probable cause and the automobile exception.* Our inquiry cannot stop here, of course, because under both the Fourth Amendment and art. 14, the general rule is that law enforcement officials must have not only probable cause but also a warrant based on a neutral and detached magistrate's finding of probable cause before they can search or seize an individual. "It is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable [under both the Fourth Amendment and art. 14] — subject only to a few specifically established and well-delineated exceptions.'" *Commonwealth* v. *Anderson*, 406 Mass. 343, 346 (1989), quoting *United States* v. *Ross*, 456 U.S. 798, 825 (1982).

One of those established and well-delineated exceptions to the Fourth Amendment and art. 14 warrant requirement is for situations when police have probable cause to believe that a motor vehicle on a public way contains contraband or evidence of a crime, and exigent circumstances make obtaining a warrant impracticable — commonly referred to at the "automobile exception." *Carroll* v. *United States*, 267 U.S. 132, 149 (1925). *Commonwealth* v. *Ortiz*, 376 Mass. 349, 357 n.7, 358 (1978).

The defendant argues that, if the troopers who stopped and searched Cast in the early morning of July 31 had any probable cause to believe that he was carrying cocaine on his trip to Plymouth, their probable cause was limited to the gray suitcase they watched him carry out of his Bridgeport home the previous afternoon, and place into the trunk of his rented Lincoln, and did not extend to the automobile as a whole. Therefore, he asserts, the automobile exception to the warrant requirement is inapplicable and the search is invalid for lack of a warrant. We disagree.

The defendant is correct in noting that, for the automobile exception to be triggered, the police must have probable cause to believe a particular automobile contains contraband,

not just probable cause regarding a specific container whose relationship to an automobile is "purely coincidental." *United States* v. *Ross, supra* at 813, quoting *Arkansas* v. *Sanders*, 442 U.S. 753, 767 (1979) (Burger, C.J., concurring). See *United States* v. *Chadwick*, 433 U.S. 1, 11-12 (1977). The facts in *Sanders* and *Chadwick* have since been used as prime examples of cases that fall outside the automobile exception, and they are instructive here. In those cases the police had no probable cause to believe the defendants' motor vehicles, in contrast to the containers in their possession, contained any drugs, and, therefore, the automobile exception was inapplicable. *United States* v. *Ross, supra* at 817.

Here, the DEA agents and State troopers had a report from their informant only that Cast would be delivering two kilograms of cocaine to Plymouth. The informant did not specify how the cocaine might be packaged or where in particular it might be located within Cast's possession as he transported it. See *United States* v. *Klein*, 860 F.2d 1489, 1494 (9th Cir. 1988) (how narcotics would be packaged and in what container, if any, they might be found was unknown to DEA agents at the time of defendant's arrest). Although the DEA agents did see the defendant carrying only a gray suitcase out of his home and did watch it being placed into the trunk of the Lincoln, they also lost the defendant from their sight at two stops in Westport and New Canaan, Connecticut, and then again for some six hours before he reappeared in view driving up Route 495 — at any point during which other containers or drug paraphernalia could have been placed elsewhere in the car.[3] See *United States* v.

---

[3]In fact, when Trooper Friend opened the trunk of the Lincoln, he spotted two pieces of luggage, the smaller gray bag observed in Bridgeport and also a larger piece which looked like one of a matching set. None of the DEA agents had seen the bigger suitcase in Cast's possession during the surveillance. Its presence in the trunk of the automobile nonetheless underscores the point that the law enforcement officials had probable cause to believe that the gray suitcase was not the only item in Cast's vehicle and that there could be cocaine elsewhere.

*Johns*, 469 U.S. 478, 482 (1985) (while United States Customs officers had open trucks under surveillance travelling to remote airstrip and returning, reeking of marihuana and loaded up with garbage bags consistent with the common packaging of marihuana, trucks were not always in their view and officers had probable cause to believe that not only the packages but the trucks themselves contained marihuana); *United States* v. *Mazzone*, 782 F.2d 757, 761 (7th Cir.), cert. denied, 479 U.S. 938 (1986) (while narcotics agents, in surveillance of defendants suspected of trafficking drugs, noticed box handed from one to the other and placed inside one van and later a filled garbage bag handed from one to the other and placed into a trunk of a car, and thus primarily focused on those two containers as locus of drugs, they also had reason to believe a search of the two vehicles might turn up additional drugs received elsewhere, drug paraphernalia, and proceeds of other drug sales; thus probable cause extended to entire van and automobile).

Under the facts of this case, when the law enforcement officials corroborated the informant's tip through surveillance and independent investigation and accumulated probable cause to believe that, on the evening of July 30-31, Cast had in his possession two kilograms of cocaine, we conclude that they had probable cause to believe the cocaine could be anywhere in the Lincoln and not just the gray suitcase. Therefore, if the circumstances were exigent, then under the automobile exception to the warrant requirement the troopers would have been entitled to execute a warrantless search of Cast and his Lincoln for cocaine.

3. *Exigent circumstances.* The defendant asserts that, even if there was probable cause to search his whole car, at least raising the potential availability to the troopers of the automobile exception, the motion judge erred in finding that there were exigent circumstances excusing the officers from obtaining a warrant. Because they had made arrangements with the informant for a drug transaction with Cast and were spending July 30-31 watching for it to take place as planned, the defendant in essence argues, the law enforcement officials

had plenty of time to present their information to a magistrate and get at least an anticipatory warrant. By failing to do that, the defendant concludes, they were simply creating their own exigency. We disagree.

To qualify as exigent circumstances, the situation facing the officers at the time they commenced their warrantless search must be such that it was impracticable for them to get a warrant. *Commonwealth* v. *Forde,* 367 Mass. 798, 800 (1975). The exigency requirement has generally not been as rigorously applied to motor vehicles as to homes. *Commonwealth* v. *Ortiz, supra* at 357. That is because the inherent mobility of automobiles creates an exigency that they, and the contraband there is probable cause to believe they contain, can quickly be moved away while a warrant is being sought. *Commonwealth* v. *Markou,* 391 Mass. 27, 30 (1984). *Commonwealth* v. *Blake,* 23 Mass. App. Ct. 456, 460 n.5 (1987). See *Carroll* v. *United States,* 267 U.S. 132, 151 (1925). If "an opportunity to obtain a search warrant prior to the seizure of an automobile invalidates its search, the opportunity must be plain and ample." *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 351 (1983), quoting *United States* v. *Newbourn,* 600 F.2d 452, 457 (4th Cir. 1979).

The motion judge ruled that the State troopers did not develop probable cause to believe cocaine would be found in Cast's automobile until their surveillance confirmed, minutes before the 12:30 A.M. search, that the Lincoln was travelling alone, unaccompanied by other vehicles, when the defendant made the last major turn on the road from Connecticut to Plymouth. Before that point, the judge ruled, law enforcement officials' fourteen-hour corroboration of the informant's tip and investigation of the defendant's activities were yielding information material to the fruition of probable cause, but would have made a warrant application premature.

In analogous cases in which police have continued a surveillance in order to corroborate an informant's tip and develop probable cause, and then moved without a warrant to seize the defendant and search his car, circumstances have been held to be exigent, to permit the search under the auto-

mobile exception. *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984) (even if anticipatory warrant had been defective, probable cause and exigent circumstances allowed automobile exception to apply in this case, where police conducting surveillance to corroborate informant's tip spotted defendant's car, heading in direction and at roughly same time predicted by informant). See *United States* v. *De Los Santos*, 810 F.2d 1326, 1337 (5th Cir), cert. denied, 484 U.S. 978 (1987) (any delay on part of police since receiving tip about defendant's trip to obtain heroin was justifiable and not merely manufactured exigency, as they had to put defendant under surveillance and corroborate tip; not until defendant arrived at stated destination did they have probable cause to search, and exigency to do so without a warrant); *State* v. *Patten*, 457 A.2d 806, 810 (Maine 1983) (while police investigating informant's tip that defendant would be driving from Limestone to Bangor and making an overnight trip to buy drugs placed defendant under surveillance and corroborated much of informant's details, they could not predict with reasonable certainty that they could get a warrant, because not until defendant was seen driving back from Bangor on last portion of road leading to Limestone that probable cause crystallized); *State* v. *Bell*, 195 N.J. Super. 49, 55-56 (App. Div. 1984) (police who investigated informant's tip that defendant would be making trip from Elizabeth, New Jersey, to New York to buy heroin did not have probable cause to search until minutes before they spotted the car heading back into Elizabeth).

This situation is in sharp contrast with the facts in *Commonwealth* v. *Forde*, 367 Mass. 798 (1975), on which the defendant relies. In *Forde*, the police inexplicably failed to obtain a warrant to search the defendant's apartment for drugs when they had had probable cause for a week, had planned to get a warrant sometime during that week and had neglected to do so. In these circumstances, the court held that the exigency was created by the officers' own unreasonable delay. *Id.* at 802.

Furthermore, while we have recognized the validity of anticipatory warrants on a showing that there will be probable cause "at the time a warrant is to be executed, and not solely at the time of its issuance," *Commonwealth* v. *Soares*, 384 Mass. 149, 155 (1981), neither this court nor any other authority has ever required the police to take such measures. See *Cardwell* v. *Lewis*, 417 U.S. 583, 595-596 (1974) (exigency may arise at any time and in a number of situations and the fact that police had probable cause and might have obtained a warrant earlier "does not negate the possibility of a current situation's necessitating prompt police action," since no principle would foreclose the right of officers to search a motor vehicle on probable cause and exigent circumstances "if a warrant was not obtained at the first practicable moment"). See also, generally, 2 W.R. LaFave, Search and Seizure § 3.7(c) (2d ed. 1987).

We affirm the conclusion of the motion judge that the troopers had not only probable cause, but also exigent circumstances to search the vehicle without a warrant.

4. *Extent of search allowed by automobile exception and art. 14.* Under the Fourth Amendment it is clear, and the defendant does not contend otherwise, that a lawful warrantless search of Cast's vehicle, pursuant to the automobile exception, would extend to the closed suitcase in the trunk. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States* v. *Ross, supra* at 825. See *Commonwealth* v. *King*, 389 Mass. 233, 247 (1983); *Commonwealth* v. *Jiminez*, 22 Mass. App. Ct. 286, 290-291 (1986). Since the scope of a warrantless search authorized by a well-delineated and established exception to the Fourth Amendment is the same as that ordered by a magistrate, then it follows that "[t]he scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted[, but rather] . . . by the object of the search and the places in which there is probable cause to believe that it may be found." *United States* v. *Ross, supra* at 824.

However, the defendant asserts that art. 14 of the Massachusetts Declaration of Rights requires a warrant to search a closed container found within a motor vehicle that may be searched without a warrant. The motion judge ruled that the search was lawful under art. 14 without reaching this question, because he ruled that the cocaine inside the suitcase was in "plain view" to the searching trooper, in the sense that by patting the outside of the bag, he knew the contents to be two kilogram bricks of cocaine.

Because we conclude that the search in question was lawful under art. 14 as well,[4] we do not reach the question whether the plain view doctrine can be applied to the tactile perceptions of the searching officers.

As the defendant correctly notes, this court has decided that art. 14 provides greater protection against unlawful search and seizure than the Fourth Amendment. See *Commonwealth* v. *Blood*, 400 Mass. 61, 74 (1987) (wiretaps); *Commonwealth* v. *Upton, supra* (confidential informants). However, the defendant has advanced no compelling reason why closed containers found in an otherwise lawful warrantless search of a motor vehicle should come within this special category where art. 14 and Fourth Amendment law diverge.

We have on several occasions applied *Carroll* v. *United States, supra,* and the automobile exception to the warrant requirement it created for exigent situations in which police have probable cause to believe a motor vehicle contains contraband. We have found such searches to be consistent with art. 14. *Commonwealth* v. *Ortiz, supra* at 358. As the United States Supreme Court observed, "the practical consequences of the *Carroll* decision would be largely nullified if the permissible scope of a warrantless search of an automobile did not include containers and packages found inside the vehicle. Contraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an auto-

_____

[4]This issue was most recently expressly left open in *Commonwealth* v. *Brillante*, 399 Mass. 152, 156 n.7 (1987).

mobile unless they are enclosed within some form of container." *United States* v. *Ross, supra* at 820.

The defendant's interpretation of art. 14 would force the police in every motor vehicle search that turned up a closed container to impound and secure the vehicle while a warrant was obtained, *United States* v. *Ross, supra* at 821 n.28, not an unobtrusive procedure from the point of view of the defendant's privacy. Such a rule would unnecessarily burden the police and criminal justice system, while providing defendants with insignificant protections against privacy intrusions. *Commonwealth* v. *Signorine*, 404 Mass. 400, 405 (1989). *Commonwealth* v. *Madera*, 402 Mass. 156, 160 (1988).

Therefore, we conclude that, under art. 14, as under the Fourth Amendment, a lawful warrantless search of a motor vehicle, based on probable cause to search the vehicle, extends to all containers, open or closed, found within.[5]

The order of the motion judge denying the defendant's motion to suppress and the judgment of conviction are affirmed.

*So ordered.*

---

[5] A number of other States have also expressly adopted the rule of *United States* v. *Ross, supra,* under their State constitutions. See *People* v. *Smith*, 95 Ill. 2d 412, 422 (1983); *Estop* v. *Commonwealth*, 663 S.W. 2d 213, 215 (Ky. 1983); *State* v. *Tatum*, 466 So.2d 29, 31-32 (La. 1985); *State* v. *Bouchles*, 457 A.2d 798, 802 (Maine 1983); *People* v. *Langen*, 60 N.Y. 2d 170, 181-182 (1983), cert. denied, 465 U.S. 1028 (1984); *State* v. *Brown*, 301 Or. 268, 276-279 (1986). We note that a different question arises under art. 14 upon the warrantless opening of a closed, locked or unlocked, container found during an inventory search of a motor vehicle.