COMMONWEALTH vs. CHARLES KILLACKEY
(and a companion case[1]).

Berkshire. March 4, 1991. - June 10, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Search and seizure, Probable cause. *Search and Seizure*, Automobile, Exigent circumstances, Probable cause. *Probable Cause*.

In a criminal case, the evidence presented at a hearing on motions to suppress controlled substances and drug paraphernalia seized in a warrantless police search of a motor vehicle established that there was not only probable cause for the police to believe that controlled substances were in the vehicle but also, in circumstances indicating a likelihood that the evidence would have been removed from the vehicle before the police could have obtained a warrant, exigent circumstances that excused the requirement of a warrant under constitutional principles; consequently, the defendants' motions to suppress the contraband seized from the vehicle should have been denied. [373-374]

INDICTMENTS found and returned in the Superior Court Department on October 4, 1989.

Pretrial motions to suppress evidence were heard by *Lawrence B. Urbano*, J.

An application for an interlocutory appeal was granted by *Wilkins*, J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him.

*Paul J. Caccaviello*, Assistant District Attorney, for the Commonwealth.

*P. Keyburn Hollister* for Charles Killackey.

*Louis J. Oggiani* for Eramya Alexandrian.

WILKINS, J. A judge of the Superior Court allowed the defendants' motions to suppress evidence seized in a warrant-

---

[1]Commonwealth vs. Eramya Alexandrian.

less police search of a motor vehicle.[2] The judge concluded that no exigent circumstances excused the police from their normal obligation to obtain a search warrant. A single justice of this court allowed the Commonwealth leave to take an interlocutory appeal. Because the police had probable cause to believe that a controlled substance was in the motor vehicle (a point the defendants do not seriously contest) and because there were exigent circumstances that required the police to act promptly, the defendants' motions to suppress should have been denied.

For several months prior to the motor vehicle search, the Berkshire County drug task force had been investigating the alleged use of narcotics by a group of five residents of Lee, three of whom had been arrested in Holyoke for heroin possession. The defendant Killackey was a member of the group. The defendant Alexandrian was not. The police knew that the group met routinely at the Skinner Sewing Center on Main Street in Lee and that, when those meetings ended, two or three of them would drive to Holyoke and return to Lee. The police task force decided that, if there appeared to be such a trip on September 22, 1989, they would follow the group members to Holyoke.

All five members of the group and Alexandrian met at the sewing center on the morning of September 22. Shortly after 1 P.M., Alexandrian and Killackey left Lee headed toward the Massachusetts turnpike in a blue Volkswagen automobile, with Alexandrian driving. This was the first time the police had seen the Volkswagen used by this group. They followed the vehicle. The defendants went to a tenement in Holyoke. A Holyoke police lieutenant advised the Berkshire County police that the tenement was a known distribution point for heroin and cocaine. The defendants came back to the car about twenty minutes later, and returned to the turnpike where they headed west. They left the turnpike at Lee and

---

[2]Each defendant had been indicted for possession of heroin with the intent to distribute and unlawful possession of a hypodermic needle and syringe.

drove to the town common, where the Lee District Court is located. When Killackey left the Volkswagen and walked toward the courthouse where he had a matter scheduled, the police moved in, detaining each defendant and searching the car. An officer found cocaine and heroin and drug paraphernalia under the cover of the gear shaft assembly.

The motion judge allowed the motions to suppress because, in his view, the police had ample opportunity to obtain a warrant as the result of their surveillance of the group and knowledge of their pattern of behavior. The police could not have obtained an anticipatory warrant to search the blue Volkswagen because they had not seen it used in any of the group's previous trips to Holyoke. The police, therefore, did not have probable cause to search the Volkswagen before the defendants left the Holyoke tenement and headed back toward Lee. The police had time to obtain a warrant only while the Volkswagen was traveling back to Lee, a period of less than an hour. We think it is clear that there was no practical possibility of obtaining a warrant if the warrant-seeking process were to have commenced at the moment the Volkswagen left Holyoke.

The principal issue is whether constitutional principles required the police (1) to obtain in advance an anticipatory, but rather general, warrant to search whatever vehicle the group might use or (2) to transmit from Holyoke details to complete an already largely prepared application for a search warrant that might be issued before the vehicle reached Lee. We think not. We also reject Alexandrian's further argument that the police were obliged to detain the vehicle at the common in Lee while they obtained a warrant to search it. See *Arkansas* v. *Sanders*, 442 U.S. 753, 765 n.14 (1979); *Commonwealth* v. *Ortiz*, 376 Mass. 349, 358 (1978).

The motion judge did not have available our opinion in *Commonwealth* v. *Cast*, 407 Mass. 891 (1990), which was decided after he had allowed the defendants' motions to suppress. In the *Cast* opinion, we discussed the question of exigent circumstances in relation to the stop and search of a motor vehicle which the police had probable cause to believe

contained cocaine. *Id.* at 903-906. We noted that the police are not obliged to obtain anticipatory warrants. *Id.* at 906. We further commented (in understatement as far as the Supreme Court's view of the Fourth Amendment to the United States Constitution is concerned) that the exigency requirement is not applied to vehicles as rigorously as it is to homes. *Id.* at 904. See 3 W.R. La Fave, Search and Seizure § 7.2(b), at 39-41 (2d ed. 1987). We cited several cases in which the warrantless search of a motor vehicle was upheld because of the exigency that, if the police did not then stop and search the vehicle (and waited to obtain a search warrant), the suspected contraband might never be located. *Id.* at 904-905. We also distinguished *Commonwealth* v. *Forde*, 367 Mass. 798 (1975), in which the police had had probable cause to search the defendant's apartment for a week, planned to get a search warrant but did not, and thereby created their own exigency by their unreasonable delay. *Commonwealth* v. *Cast, supra* at 905.

The likelihood that the evidence would have been removed from the vehicle before the police could have obtained a warrant made the circumstances exigent. See *Commonwealth* v. *Sergienko*, 399 Mass. 291, 296 (1987), where factors that bear on determining whether there were exigent circumstances are listed. The orders allowing the defendants' motions to suppress the evidence are vacated, and orders shall be entered denying the defendants' motions to suppress.

*So ordered.*