Agnes, Peter W., J.
1. Introduction
The defendants are each charged by indictment with trafficking in cocaine based on evidence seized by the North Worcester County Drug Task Force on May 14, 2008. The defendants have filed pretrial motions to suppress the warrantless searches that led to the discovery of the evidence on grounds that the police lacked probable cause or even reasonable suspicion.
2. Findings of Fact
Based on the credible testimony presented at the hearing on the pretrial motion to suppress I make the following findings of fact and rulings of law. On May 14, 2008 at approximately 3:00-3:30 p.m., Detective Joseph Siciliano of the Leominster Police Department was on duty with other members of the North Worcester County Drug Task Force (Task Force) when he received a telephone call from a confidential informant (Cl) who he knew and who had provided information to him in the past that led to the arrest and conviction of individuals for drug offenses. Detective Joseph Si-ciliano is an experienced narcotics investigator with over 24 years of experience. He has participated in hundreds of investigations and arrests of persons for narcotic drug violations. The Cl told Detective Siciliano that a white male by the name of Ryan Hehir (whose identity was known to Detective Siciliano) had been selling drugs from his gray Mitsubishi Gallant automobile, registration number 1XY950, and that in 20 minutes Hehir would deliver a quantity of cocaine to an individual in the King’s Corner area. This area contains a major four-way intersection. Detective Joseph Siciliano confirmed that the motor vehicle described by the Cl was indeed registered to defendant Ryan Hehir. Siciliano also knew that defendant Hehir had a prior criminal record for “assaults.”
3.
Detective Siciliano made arrangements for members of the Task Force to set up surveillance at King’s Corner (a major four-way intersection with businesses on all sides) and headed to that location. He arrived within 5-7 minutes after receiving the telephone call from the CL A short time later, after arriving at the scene, Detective Siciliano saw a motor vehicle matching the description supplied by the Cl pull into the parking lot of the Weather Vane restaurant at King’s Comer. He also saw a male subject who appeared to be waiting for someone in the same area as the vehicle parked. Detective Siciliano, who knew defendant Hehir, ordered several cruisers to partially block the path of the subject vehicle. A cruiser blocked the front and a cruiser blocked the side, but the vehicle was not blocked from the rear. Detective Siciliano exited his cruiser and he and other officers approached the vehicle with their weapons drawn, and ordered the two occupants out of the vehicle. Defendant Ryan Hehir was the operator and defendant Frederick Hardy was the passenger.
*477 4.
The police pat-frisked the occupants of the vehicle. Defendant Hardy was found to have a hard object larger than a golf ball but smaller than a baseball in his right, front pants pocket. It turned out to be a quantity of a white powdery substance which officers at the time believed to be cocaine. Subsequent testing confirmed that the substance was cocaine. A pat frisk of defendant Hehir did not reveal any drugs, but rather another hard object which when removed turned out to be a wad of United States currency in the amount of $1,623. Following the discovery of the cocaine and the cash, the defendants were arrested. The male subject who had been seen waiting in the area where the subject vehicle parked also was pat frisked. No weapons or contraband was found on his person and he was released.
5.
Miranda warnings were administered to the defendants. Defendant Hardy stated that he understood his rights. Defendant Hehir told defendant Hardy “Don’t say anything.” Defendant Hardy then stated that defendant Hehir had told him to grab the cocaine that was in the vehicle’s center console. A subsequent search of the vehicle’s console turned up a quantity of inositol and protein supplements which in the experience of the police are often used as cutting agents with cocaine. The police also discovered several boxes of plastic baggies at least one of which was opened.
6. Discussion
Based on the above findings, Detective Siciliano was dealing with a reliable, confidential informant. See Commonwealth v. Cast, 407 Mass. 891, 896 (1990); Commonwealth v. Upton (II), 394 Mass. 363, 376 (1985). As for whether the Cl’s tip was based on personal knowledge, the question is whether the details of the tip confirmed by Detective Siciliano were sufficient to make up for this deficiency and to establish probable cause. “Independent police corroboration of a detailed tip may compensate for deficiencies in either or both prongs of the test.” Commonwealth v. Cast, 407 Mass. at 896. In Commonwealth v. Robinson, 403 Mass. 163 (1988), the Supreme Judicial Court considered a case in which the Cl told the police “that a twenly-year-old black male would be arriving at the Greyhound bus station at about 5 or 5:30 A.M., on the bus from New York City and that the man would be carrying a large amount of cocaine. The informant described the man as being approximately six feet tall and wearing a black windbreaker with a white stripe, dark pants, and a black T-shirt with an anti-drug slogan printed on it.” The police observed a man get off a bus from New York City who matched the description supplied by the CL Although the bus was late in arriving, the Supreme Judicial Court observed that these facts compared favorably with the corroboration regarded by the United States Supreme Court as sufficient in Draper v. United States, 358 U.S. 307 (1959). “We ‘give continued credibility to the Draper principle, because that approach, carefully applied, is both in the public interest, and consistent with the spirit of Aguilar-Spinelli Commonwealth v. Robinson, 407 Mass. at 166, quoting Commonwealth v. Borges, 395 Mass. 788, 798 (1995) (Hennessey, C.J., concurring). Here, the fact that the Cl accurately predicted the time when the meet was to take place and that a person was seen at the location who appeared to be waiting for someone to arrive is significant. See Commonwealth v. Sonata, 403 Mass. 167, 171 (1988); Commonwealth v. Paredes, 35 Mass.App.Ct. 666, 670 (1993). Contrast, Commonwealth v. Spence, 403 Mass. 179 (1988); Commonwealth v. Brown, 31 Mass.App.Ct. 574 (1991). Just as in Commonwealth v. Welch, 420 Mass. 646, 651-52 (1995), [f]rom the level of detail, it could be inferred that the informant had direct knowledge of the defendant and of the criminal activity that was to take place on that evening.”[1]
7.
Alternatively, even if the police corroboration of the informant’s tip was not sufficient to establish probable cause, it was nevertheless sufficient to warrant an investigative stop. See Commonwealth v. Anderson, 366 Mass. 394, 399-400 (1974). Under this mode of analysis, the question is whether the conduct of the police in partially blocking the defendants’ vehicle, approaching it with guns drawn, and ordering the occupants to exit exceeded the scope of their authority and amounted to an arrest. Although the tip supplied by the Cl did not contain information that the suspects were armed, the police in this case had reasonable grounds to be concerned for their safety.
In deciding whether this encounter was an arrest or “merely” a stop, we do not apply a bright line test. The answer depends on the proportional relationship of the degree of intrusiveness on the defendant to the degree of suspicion that prompted the intrusion. We should consider the degree to which the defendant’s movement is restrained, the degree of force used by the police, and the extent of the intrusion. Specific factors include the length of the encounter, the nature of the inquiry, the possibility of flight, and, most important, the danger to the safety of the officers or the public or both.
Commonwealth v. Willis, 415 Mass. 814, 819-20 (1993) (citations and quotations omitted). In Wittis, the critical factor that led the court to characterize the police conduct as an investigative stop and not an arrest was their reasonable belief that they were dealing with an armed subject and that therefore their safety was at risk. Although the informant’s tip in this case did not mention a firearm, the police were aware that the target, defendant Hehir, had a criminal record for assaults, and that he was in the business of selling drugs. The association between drug distribution and violence is well established. See Commonwealth v. Cannon, 449 Mass. 462, 470 (2007), and cases cited.
*478 8.
Based on the above analysis, there is no basis for suppressing any of the evidence seized by the police including the cocaine and United States currency, the cutting agents and baggies seized from the defendants’ vehicle, the statement made by defendant Hardy and the contents of the conversation overheard when the police answered the defendants’ cell phones at the police station. The discovery of the cocaine and the cash warranted the defendants’ arrest which, in turn, provided probable cause to believe that evidence of drug distribution would be found in the vehicle. See Commonwealth v. Motto, 424 Mass. 117, 124 (1997) (when probable cause exists, exigent circumstances justifying a warrantless search is supplied by inherent mobility of automobiles). Here, there is no indication that defendant Hardy did not understand and validly waive his Miranda rights. In fact, he told the police he did.
ORDER
For the above reasons, the defendants’ motion to suppress is DENIED.

In Commonwealth v. Welch, 402 Mass. 646, 652 (1995), the Supreme Judicial Court regarded the following level of corroboration adequate to meet the Draper standard and thus to establish probable cause:
The police observed a man, matching the description given by the informant, arrive at the stated location, shortly before 8 P.M., in a Mercury station wagon. The police also observed a fire department decal on the window of the station wagon, which supported the informant’s claim that the defendant was a firefighter.