COMMONWEALTH *vs*. REYNALDO RIVERA.

No. 90-P-139.

Worcester. June 12, 1990. - September 26, 1990.

Present: BROWN, PERRETTA, & GILLERMAN, JJ.

*Probable Cause. Constitutional Law*, Search and seizure, Probable cause.
*Search and Seizure*, Probable cause. *Joint Enterprise. Evidence*, Com-
mon criminal enterprise. *Practice, Criminal*, Instructions to jury,
Verdict.

At a hearing on a motion to suppress contraband seized after a warrantless
search of the defendant's automobile, evidence that an informant pro-
vided first-hand detailed information about a pending drug deal and
subsequent corroboration by independent police observation of the place
and time of the defendant's arrival as predicted by the informant war-
ranted the judge's conclusion that there was probable cause to arrest
the defendant. [292-294]

At the trial of a defendant on a charge of unlawful possession of cocaine
with intent to distribute, a list containing quantities and prices taken
from the person of the defendant's brother during the booking proce-
dure following the defendant's arrest was admissible because the de-
fendant was involved in a joint criminal enterprise with his brother;
furthermore, the judge's instructions to the jury on joint venture, which
failed to point out that if the jury failed to find a joint venture then the
price list could not be considered as evidence of the defendant's intent
to distribute, did not, in the circumstances, create a substantial risk of a
miscarriage of justice. [294-295]

A defendant who had been found guilty of unlawful possession of cocaine
with intent to distribute after police had seized more than 150 grams of
cocaine from an automobile in which he was a passenger, but who had
been acquitted of trafficking in 100-200 grams of cocaine, was not enti-
tled to have the jury's verdict set aside as inconsistent. [295]

INDICTMENT found and returned in the Superior Court De-
partment on March 8, 1989.

A motion to suppress evidence was heard by *James P.
Donohue*, J., and the case was tried before him.

*Sandra J. Lamar* for the defendant.

*Claudia R. Sullivan*, Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. On appeal from a conviction by a jury of unlawful possession of cocaine with intent to distribute, G. L. c. 94C, § 32A(*a*), the defendant claims that his motion to suppress should have been allowed and that certain other rulings were erroneous.

1. *Motion to suppress evidence.*[1]

At a pretrial suppression hearing, a police officer assigned to the North Worcester County drug task force testified that on November 22, 1988, he received a telephone call about 1:30 P.M. from an individual known to the officer.[2]

The informant, whom the officer knew to be a rehabilitated addict, had never previously supplied any information to the police. The judge found that the informant told the officer "that a big cocaine deal was about to take place behind the South Gardner laundromat at about 4:00 P.M. that afternoon . . . [and] that two Puerto Rican males would be coming from Fitchburg . . . in either a yellow Cadillac or a small blue Toyota." One of the two men was named Rivera, and the informant told the officer that many times in the past he had purchased drugs from Rivera. According to the informant, Rivera weighed about 200 pounds, was in his early twenties, and would be carrying the cocaine. The informant added that when Rivera arrived he (referring to himself) would walk up to the motor vehicle and purchase the cocaine from the persons described. According to the officer, the informant was motivated by a desire "to help the police catch and convict other drug offenders." The informant also said that one of the men could be armed.

The officer, with four other police officers, two of whom were State police troopers, proceeded to stake out the laundromat. At 4:18 P.M. the officer observed a two-door, blue

---

[1]The facts are drawn from the judge's findings, amplified, where appropriate, by undisputed testimony of the police officer, whose credibility, we note from the findings, was accepted by the judge.

[2]The officer also knew the informant's mother and had worked on an investigation when the informant had reported his wallet missing.

Toyota drive into the area to the rear of the laundromat. The officer, who was stationed inside a fire station fifty to seventy-five feet away, observed "two Puerto Rican males" inside the automobile, one at the driver's seat, and the other seated in the rear. The one in the rear, the defendant, got out of the vehicle, looked "from side to side," and then walked down the driveway to the front of the laundromat. Again he looked from side to side and returned to the automobile. Then the automobile drove out of the area and five minutes later returned. The occupants were seated as they were before.

Still observing from the fire station, the officer now saw his informant approach the automobile from the rear and then get into the automobile. Upon a radio signal all five officers, two in unmarked automobiles and the others on foot, one with his gun drawn, all descended upon the vehicle. The Toyota attempted to pull away, but the State police automobile prevented it from doing so. The three occupants (including the informant) were ordered out of their automobile, and the automobile was searched. The police found two bags of cocaine, one underneath the rear seat and the other beneath the rear window. The driver of the automobile was the defendant's brother, Ricardo Rivera.

The judge concluded that there was probable cause to arrest and that the warrantless search of the defendant's automobile was justified as a search incident to a lawful arrest. He based his decision on the "detailed description of the crime offered by the informant, its subsequent corroboration by independent police investigation, and the informant's admission against interest."[3]

*Commonwealth* v. *Cast*, 407 Mass. 891, 895 (1990), sets out the applicable law and authorities. Where, as here, an informant's tip is relied upon by the police as supplying probable cause to arrest and search, both the "basis of knowl-

---

[3]Because we decide that the judge's conclusion was justified on the basis of the information supplied and its subsequent corroboration by the police, we need not reach the issue of the informant's "admission against interest," if there was one. See *Commonwealth* v. *Melendez*, 407 Mass. 53, 56 (1990).

edge" test and the "veracity" test of *Aguilar* v. *Texas*, 378
U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410
(1969), must be satisfied to comply with the requirements of
art. 14 of the Massachusetts Declaration of Rights.[4] *Com-
monwealth* v. *Cast*, *supra* at 896. "Information provided by
a named informant is generally accorded more weight" than
those instances where the informant is unknown. *Common-
wealth* v. *Grzembski*, 393 Mass. 516, 522 (1984).

The "basis of knowledge" requirement is quickly satisfied.
Since the informant had arranged the meeting and was to be
a participant in the transaction, it was obvious that the basis
of his knowledge of the impending deal was first-hand; the
informant's basis of knowledge was, as the court said in
*Commonwealth* v. *Cast*, *supra* at 896, "inherent in the tip
itself."

The "veracity" test — which requires either that the in-
formant be credible or his information reliable — is also sat-
isfied. There was first-hand information from a known in-
formant, see *Commonwealth* v. *Grzembski*, *supra*, about a
pending drug deal involving both the defendant and the in-
formant; the known informant said he had, in the past, dealt
in similar drug deals with the person described; there was a
detailed description of the automobile and of one of the two
men involved, and, finally, there was a prediction of the time
and place of arrival. All these factors combined to establish
the reliability of the information. With that information in
hand the police had good reason to believe that if the person
described arrived by automobile in Gardner at 4 P.M. as
agreed and as predicted, he would probably be carrying with
him in the automobile the promised large quantity of
cocaine.

Later, independent police observation corroborated the
place and time of the defendant's arrival in South Gardner
as predicted by the informant. The judge also found that the

---

[4]The defendant has not claimed or argued that the search of the auto-
mobile failed to satisfy the requirements of the "automobile exception" to
the warrant requirement, see *Commonwealth* v. *Cast*, 407 Mass. at 901,
and therefore we need not discuss the point.

police observed suspicious acts of the defendant which provided further corroboration of the tip. At this point, as in *Commonwealth v. Cast, supra* at 898, the police "had enough knowledge to conclude that the informant had been in personal contact with the defendant to arrange the drug transaction that [day] and that his tip was most likely based on first-hand knowledge of the defendant and his operation." Probable cause, not proof beyond a reasonable doubt, was all that was required. There was no need to witness the actual drug transaction before the police moved in on the automobile.

2. *Admission of the price list.*

Following the arrest and search of the automobile in the parking area at the rear of the laundromat, the defendant and his brother were searched in the booking area of the Gardner police station. There, on the person of Ricardo, the defendant's brother, the police found a yellow piece of paper with a list of quantities and prices, starting with a gram ($40.00) and ending with an ounce ($1,100). The price list was admitted as an exhibit over the defendant's objection and request that the exhibit be limited to Ricardo.

The judge's ruling was correct. The testimony describing the events at the rear of the laundromat and the informant's conversation with the police officer about the imminent drug deal involving one or two men (elicited on cross-examination), essentially the same as that set forth under point 1, had already been introduced in evidence, and this evidence was sufficient to show a joint venture. See *Commonwealth v. Borans*, 379 Mass. 117, 145 n.26 (1979).

It is true, as the defendant claims, that the judge's instructions to the jury on joint venture did not point out that if the jury failed to find a joint venture then the price list could not be considered as evidence of the defendant's intent to distribute. See *Commonwealth v. Bongarzone*, 390 Mass. 326, 347 (1983). But the defendant's contention on appeal with respect to those instructions is an afterthought; at the trial, following the conclusion of his instructions to the jury, the judge asked counsel if they had any further comment, and,

other than a point not now in issue, the defendant's counsel indicated that he had nothing else. A challenge to the adequacy of the instructions is not now available to the defend-' ant. See *Commonwealth* v. *Griffin*, 19 Mass. App. Ct. 174, 180 (1985). The omitted instruction did not create a substantial risk of a miscarriage of justice. The defendant's "own damning pretrial statements,"[5] *Commonwealth* v. *Bongarzone*, 390 Mass. at 347, together with the additional evidence described earlier, made the case against the defendant overwhelming.

3. *The claim of inconsistent verdicts.*

The defendant claims there was a fatal inconsistency in the verdicts.[6] The defendant fails to recognize that the jury could have acquitted the defendant of the charge of trafficking in more than 100 grams of cocaine on the theory that the larger of the two bags found in the automobile, which contained over 100 grams, was put there by the informant (as the defendant testified), and that the smaller of the two bags, which contained less than 100 grams, had been brought to Gardner by the defendant.

Whether or not there is a rational explanation of the verdict, it is the settled law that "[i]nconsistency of verdicts in criminal cases is not a matter for judicial inquiry." *Commonwealth* v. *Harrison*, 25 Mass. App. Ct. 267, 270 (1988), quoting from *Commonwealth* v. *Therrien*, 383 Mass. 529, 537 (1981). Neither evident compromise nor mere inconsistency is sufficient to reverse a conviction. *Commonwealth* v. *Sherry*, 386 Mass. 682, 698 (1982).

*Judgment affirmed.*

---

[5]The defendant had signed a statement admitting that he intended to participate in a sale of cocaine.

[6]The defendant was acquitted of trafficking in 100-200 grams of cocaine. The amount of cocaine seized was more than 150 grams.