COMMONWEALTH *vs.* SANTIAGO ROSARIO. No. 93-P-58. September 1, 1994. *Search and Seizure*, Probable cause. *Constitutional Law*, Search and seizure, Probable cause. *Probable Cause. Controlled Substances.*

There were two confidential informers who identified the defendant Rosario to the Worcester police as a "big cocaine dealer." The first informer had no track record with the authorities which would classify him as reliable under *Aguilar-Spinelli* standards.[1] The second informer was reliable in the sense that his information had previously led to arrests and seizure of narcotics. From the first informer, however, the police received detailed information about an imminent sale of cocaine. Most of that detailed information the police corroborated through observation before making a search and arrest. They had found cocaine in the car being driven by the defendant, although considerably less than the half kilogram predicted by the first informer. A Superior Court judge allowed a motion to suppress

---

[1] *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969).

the fruits of the search on the ground that the police had insufficiently corroborated the tips from the informers. We are of opinion that, matched against *Draper* v. *United States*, 358 U.S. 307, 309-310, 312-313 (1959), *Commonwealth* v. *Robinson*, 403 Mass. 163, 164, 166 (1988), *Commonwealth* v. *Brown*, 31 Mass. App. Ct. 574, 575-578 (1991), and *Commonwealth* v. *Paredes*, 35 Mass. App. Ct. 666, 669-670 (1993), the police had solid probable cause to make their search and that the motion to suppress should have been denied.

Informer number one called Sergeant David Richardson of the Worcester police at his home in the late afternoon of July 27, 1990, to ask for an immediate meeting. They met at about 6 P.M. and the informer reported that there would be a sale of a large quantity of cocaine by Rosario "any minute" at Big Boy's, a restaurant in Worcester. That information came to the informer from a third person. Of his own knowledge, informer number one added the following. Rosario would be driving a dark blue Oldsmobile with license plate number 654-TAL. Rosario was dark-skinned; of Dominican background; approximately thirty years of age; five feet, six inches in height; clean shaven; with curly dark hair worn long in back. He would be wearing a bright yellow baseball cap with the lettering "Salisbury Beach" on the front. On his sales trip, Rosario would be accompanied by a woman with the first name of Rosa. The purchase was to be made by a white woman driving a blue Datsun 200SX. The information about the blue Oldsmobile and a woman named Rosa squared with Sergeant Richardson's knowledge of Rosa Torres, whom he knew from previous drug encounters and knew to operate a blue Oldsmobile.

Sergeant Richardson lost no time in driving to Big Boy's in an unmarked car. There he spotted the blue Datsun, with the plate number (precise plate number not disclosed in the record) he had been told he would see. There was a woman inside the car and another outside. The policeman and the woman outside made eye contact. Richardson left the parking lot, the woman's eyes following him, and took up a vantage point across the street. Within a few minutes, a man and a woman came into Richardson's field of view, walking from the restaurant along an exit driveway. The man answered perfectly to the description of Rosario with which Richardson had been furnished, right down to the bright yellow hat. The woman he recognized as Rosa Torres. Rosario and Torres looked up and down the street, in all directions, as if they were looking for somebody. Then they walked back from whence they had come. A few seconds later, Sergeant Richardson saw the Datsun pull out of the Big Boy's parking lot, with, so far as Richardson could make out from his place of surveillance, two or three persons in it. Convinced that the planned transaction had gone awry, Richardson followed the Datsun, intending to stop it. Some three miles later, Richardson, now joined by another officer, was able to approach the Datsun while it was at a traffic light. He ascertained that there was no one in the back seat — he had thought perhaps there was —

and that the same two women were in the car that he had earlier seen at Big Boy's.

At this point the light changed to green. Richardson looked up and saw a gray Chrysler K-car ahead of the Datsun and moving forward. What Richardson particularly noticed about the K-car was that it was driven by the man in the bright yellow hat, and that the passenger was turned around watching him and his partner. That passenger was Rosa Torres. By this time, a marked cruiser had arrived on the scene and Richardson entered it to chase the K-car. Its lead was such that after three right turns, it eluded the police. The police spotted the car again, parked on Southbridge Street and two people walking away from the car. They were the man in the yellow hat and Torres. The officers stopped them, searched the K-car, and found the cocaine.[2]

We have set out the facts in some detail because search and seizure cases frequently present subtle problems as to which side of the line a case falls. *Commonwealth* v. *Borges*, 395 Mass. 788, 797 (1985) (Hennessey, C. J., concurring). At no point has the government attempted to argue that the tips themselves were sufficient to justify the stop and search. The first informer, from whom the detail came, was unproved and the information about the imminence of the drug transaction was secondhand. But, as is by now well established, police investigation can compensate for the deficiencies in the tips. Here the police verified the physical description, hat, and companion of the suspected drug seller. He turned up at Big Boy's as, according to the informer, he was supposed to and approximately when he was supposed to. There were women present in the predicted model, color, and make of automobile. The women in the Datsun attracted attention by staring when Sergeant Richardson made eye contact. Rosario and Torres were obviously looking for someone they intended to meet in the Big Boy's parking lot. It is not a crime to meet someone and to look out expectantly for them, but the police at this point are looking at probabilities, in context, not proof beyond a reasonable doubt. See *Draper* v. *United States*, 358 U.S. at 313. In the circumstances, the pursuit of the Datsun was reasonable police follow up. Then the defendant comes into view in the same column of cars as the Datsun, and Torres, the defendant's passenger, shows exceptional interest in what the police are doing. Except that the car driven by the defendant was a gray K-car (it turned out to be rented), rather than a blue Oldsmobile, what the police observed was an enactment in detail of what they had been told, in detail, would happen. The case falls in the category described in *Commonwealth* v. *Robinson*, 403 Mass. at 166 & n.2, and *Commonwealth* v. *Cast*, 407 Mass. 891, 899-901 (1990), and the evidence seized was lawfully obtained.

---

[2]The defense has not suggested that the police, in the circumstances, ought to have obtained a warrant to search the K-car, stopped on a public way and thought to contain contraband. See *Commonwealth* v. *Cast*, 407 Mass. 891, 901 (1990), describing the so-called "automobile exception."

The order directing that the evidence seized be suppressed is reversed and the case is remanded for trial.

*So ordered.*

*William E. Loughlin*, Assistant District Attorney, for the Commonwealth.

*Harry D. Quick, III*, for the defendant.