Garsh, J.
The defendant, Onitxa Mercado (“Mercado”), is charged with trafficking in a class B controlled substance (cocaine), unlawful possession of a firearm, unlawful possession of ammunition, conspiracy to violate the controlled substance laws, receiving stolen property, and unlawful possession of a class D controlled substance (marijuana). The defendant moves to suppress all evidence seized during the execution of a search warrant at Apartment 5D of Building 5, located at the Pleasant View Housing Project, Fall River, Massachusetts. The defendant contends that there was no probable cause for the issuance of the search warrant. For the reasons set forth below, the defendant’s motion is allowed.

BACKGROUND

According to the affidavit filed in support of the search warrant, within a three-day period prior to applying for the warrsuit, Joseph T. Donnelly, Jr., a police officer assigned to the narcotics unit, had received information from a first-time confidential informant (“Cl”) to the effect that a person who responded to the name of Oni was selling crack cocaine from Apartment 5D of Building 5 of the Pleasant View Housing Project in Fall River, Massachusetts. The affiant stated that the Cl wished to remain unnamed for fear of reprisals. The affidavit does not indicate, even in a conclusory fashion, that the affiant knows the identity and whereabouts of the informant. There is no indication that the Cl provided the police with his/her name, telephone number, or address.
According to the affidavit, the Cl twice accompanied a friend to Apartment 5D within the past seveniy-two hours and, on each occasion, the Cl observed the friend hand money to a female and saw this same female hand crack cocaine to the friend. The Cl heard the friend address the female as Oni. On both occasions, the female opened the door. Before the exchange took place, on both occasions, the Cl heard the friend speak to Oni about buying crack cocaine, heard Oni say “okay,” saw her close the apartment door and *79 reopen it within one to two minutes, and then saw the exchange between the friend and Oni take place. The Cl stated that he/she was familiar with the appearance of crack cocaine as the result of being a former crack cocaine user. The Cl did not provide the name of the friend to the police.
The Cl identified the Pleasant View Housing Project as being reachable from Herman Street in Fall River. The Cl further stated that Building 5 was on the south side of Herman Street at the top east section of the project and that it had the number 5 on the outside of the building and had four apartments, two on the first floor and two on the second floor. Apartment 5D, according to the Cl, was reachable by entering the front outside door of the building and going up to the second floor level. The Cl further stated that Apartment 5D was the second floor right side apartment when looking at the building from the front.
The Cl described Oni as a dark-skinned and dark-haired Hispanic female, about 5’5" tall, with a thin build. The Cl further stated that Oni was about twenty-eight to thirty years old and that she had long fingernails, tied her hair in a bun, and wore several gold necklaces and bracelets.
After speaking with the Cl, the affiant set up a daytime and nighttime surveillance of Building 5 in the Pleasant View Housing Project. During that surveillance, he confirmed that this building was indeed located on the south side of Herman Street at the upper east section of the Pleasant View Housing Project and that the number 5 is displayed on the outside of the building.
During his surveillance, the affiant observed a female who fit the description of Oni provided by the CL He saw her standing on the front porch of Building 5 on one occasion. The affidavit does not state that she was seen on the front porch of the second floor, right-side apartment when looking at the building from the front. The affiant states that, on another occasion, he saw this same female looking out the second floor entry window. The affiant also observed the female go into or come out of the front outside door of Building 5 on several occasions. The affidavit does not state that she was seen participating in anything that appeared to be a drug transaction, interacting with any known drug users, or possessing anything that appeared to be contraband.
The affiant also observed numerous persons other than the female believed to be Oni go into the front outside door of Building 5. Twelve of those persons exited the building within three to five minutes and left the area, and two of those twelve were known to the affiant to be drug users. The affiant does not state that he was able to determine to which floor of the building or to which of the four apartments any of the persons who entered the building through the common front door went. Nor does the affiant correlate the comings and goings of any of the twelve persons who left shortly after arriving to Oni’s presence in Building 5. There is, for example, nothing to indicate that the police had seen Oni arrive or had seen her on her porch or in a window and that she had not left the building before one of the twelve entered.
The affidavit further states that the police established that Apartment 5D is rented by Onitxa Mercado, who was born on August 22, 1974, and that this individual is an Hispanic female who has had prior narcotics arrests and convictions for the charges of distribution of both a class A controlled substance (heroin) and a class B controlled substance (cocaine). The affidavit does not state the dates of any such convictions.
Based upon the information contained in the affidavit and his experience as a police officer, the affiant concluded that cocaine is being kept and sold in and from Apartment 5D of the Pleasant View Housing Project in Fall River by Onitxa Mercado and sought a search warrant for said drugs. The warrant issued.

DISCUSSION

The defendant asserts that there was no probable cause for the issuance of the search warrant because the affidavit in support of the search warrant did not satisfy the two-pronged test articulated in Commonwealth v. Upton, 394 Mass. 363 (1985). In reviewing the warrant application to determine whether probable cause to issue the warrant existed, the court should read the affidavit in an ordinary, commonsense manner without subjecting it to hypercritical analysis. Commonwealth v. Blake, 413 Mass. 823, 827 (1992).
Where an affiant relies on information provided by a confidential informant, the affidavit must satisfy the two-pronged test set forth in Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), before a finding of probable cause can be made. Upton, 394 Mass. at 374. Under the Aguilar-Spinelli standard, the affidavit must demonstrate “(1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was ‘credible’ or his information ‘reliable’ (the veracity test).” Upton, 394 Mass. at 375, quoting Aguilar, 378 U.S. at 114. Independent police corroboration of an informant’s tip can compensate for deficiencies in either or both prongs of the test. Commonwealth v. Cast, 407 Mass. 891, 896 (1990); Upton, 394 Mass. at 376.
In this case, there is no dispute that the basis of knowledge test was satisfied. That prong was met because the Cl claimed to have personally observed and heard the persons participating in the activities alleged to have taken place. See Commonwealth v. Mejia, 411 Mass. 108, 111 n.2 (1991); Commonwealth v. Alfonso A., 53 Mass.App.Ct. 279, 282 (2001).
*80 It is the veracity prong which the defendant claims has not been satisfied. Indeed, the affidavit established neither the general veracity of the Cl nor the specific reliability of his/her statements to the affiant concerning Oni. See Commonwealth v. Parapar, 404 Mass. 319, 322 (1989) (noting that veracity prong may be satisfied if the affidavit establishes “either the general veracity of the informant or the specific reliability” of the statement). As a first-time informant, the Cl had no record of furnishing reliable information to the police in the past which would indicate veracity. See Commonwealth v. Byfield, 413 Mass. 426, 431 (1992) (concluding that veracity prong satisfied when informant has previously provided information leading to arrest and conviction of named individual); Commonwealth v. Perez-Baez, 410 Mass. 43, 45-46 (1991) (explaining that if the informant previously has offered information leading to an arrest and seizure of controlled substances, the veracity prong is satisfied). The Cl also made no statement against the informant’s penal interest. See Commonwealth v. Allen, 406 Mass. 575, 579 (1990) (noting that statement made against informant’s penal interest when police know the informant’s identity may be considered as one factor bearing on informant’s reliability). Even assuming that information may be so detailed or idiosyncratic as to be self-verifying, the details furnished by the Cl were not enough to satisfy the veracity test. See Commonwealth v. Rojas, 403 Mass. 483, 487 (explaining that a tip is not self-verifying where it did not provide “particularized distinguishing characteristics of the . . . apartment, possessions, or activities”); Alfonso A., 53 Mass.App.Ct. at 284 (noting that “this court has questioned the notion that detail, alone, uncorroborated by police investigation, is an indication of veracity”).
Further, nothing in the affidavit’s description of the officer’s contact with the Cl makes this informant distinguishable from an anonymous tipster. See Alfonso A., 53 Mass.App.Ct. at 287 (vague averment that the affiant knows the identity and whereabouts of the informant without any indication that he knew the name of the informant and could readily reach him or her is insufficient to strengthen the reliability of a tip). The affidavit does not specify whether the affiant received the information from the Cl in person or by way of a telephone call. The affiant does not state whether he knows or has verified the name, address, and telephone number of the CL The affidavit does not contain any information from which it could be reasonably inferred that the Cl’s identity was known to the police.
The Commonwealth is correct that independent police corroboration of. information supplied by an informant often can compensate for deficiencies in the veracity prong of the Aguilar-Spinelli test. See Commonwealth v. Bakoian, 412 Mass. 295, 298 (1992) (explaining that police corroboration of an informant’s detailed tip can compensate for deficiencies in veracity test). If, however, “the description or other information obtained from the informant is likely to be known by others, the information is not accorded similar reliability.” Alfonso A., 53 Mass.App.Ct. at 286. In Commonwealth v. Rosario, 37 Mass.App.Ct. 920, 922 (1994), for example, observations by police that the suspect, said by the informant to be selling drugs, arrived at the location and time predicted by the informant and began obviously looking for someone he intended to meet there amounted to verification of a tip.
Here, the police corroborated that Building 5 of the Pleasant View Housing Project was located in Fall River where the Cl said it was and that the number 5 was on the front of the building, as the Cl represented. These are obvious details about a building to which the public has access. “The public nature of the [building] prevented the informant’s knowledge from being sufficiently unique to be reliable.” Afonso A., 53 Mass.App.Ct. at 286. Similarly, the fact that a dark-haired, dark-skinned, Hispanic female in her late twenties answered to the name Oni, wore her hair in a bun, wore gold bracelets and necklaces, and rented Apartment 5D is information likely to be known by others. Where a person lives and that person’s physical description and typical mode of dress are not the kind of details whose corroboration can supply the otherwise missing veracity element. See Commonwealth v. Desper, 419 Mass. 163, 167-68 (1994) (explaining that veracity of informant who claimed to have personally observed individual selling drugs at a particular location is not bolstered by police confirmation of their identities and their presence at that location).
The fact that the lessor of Apartment 5D had been previously convicted of distributing cocaine also is not enough to bolster the Cl’s reliability. The affidavit does not state when the target was convicted of this offense. A prior criminal conviction must be both similar to the crime alleged and sufficiently recent to support an inference of current criminal involvement. See id. at 167.
The police did not see the defendant engage in any suspicious conduct. See Commonwealth v. Va Meng Joe, 425 Mass. 99, 105 (1997) (concluding that defendant’s slowing down as he reached the location at which the informant had indicated the rendezvous was to take place and looking around as if he were meeting someone before driving off is suspicious conduct which may be used to enhance the informant’s reliability). The affiant’s observation of ten unknown persons visiting the building for three to five minutes does not bolster the Cl’s veracity because there was no evidence that any of these individuals visited Apartment 5D. See Byfield, 413 Mass. at 430, n.7 (observations by the police of several young men visiting a building for short periods of time did not contribute to a finding of probable cause where there was no evi *81 dence that these individuals visited the particular apartment for which the search warrant issued).
The affiant also observed two known drug users enter and remain for three- to five-minute periods in Building 5. That observation is not, by itself, sufficient to remedy the absence of any other indicia of reliability. Although the Court in Commonwealth v. Valdez, 402 Mass. 65, 71, n.4 (1988), stated that observations of known drug users entering a building are consistent with an informant’s statements that drugs were being offered for sale at that building even if the police have observed only the building's main entrance, in that case the police had observed “several known drug users" entering and leaving the building in three to five 'minute intervals. Id. at 66. One of the “known drug users” was identified in the affidavit. Id. Here, by contrast, only two such persons were seen. Neither one was identified in the affidavit. Further, there was nothing in the affidavit in Valdez that indicated that the suspect often was not in the target apartment. The instant affidavit states that, during the period of surveillance, the target “several” times went into or came out of the building. The affidavit does not state, and there is no basis to infer, that either of the two known drug users entered the building during a time when police had seen the defendant enter but not yet leave or after seeing the defendant on the porch or in the window. Because the defendant on “several” occasions was not in the building and because only two known drug users came into the building on occasions when she may or may not have been there, Valdez does not control.
Valdez also does not compel this court to find the reliability prong has been satisfied because the affidavit in that case included the fact that the informant had been proven correct in his revelation of the whereabouts of an arrestee. Id. at 70-71. “We think that this level of past assistance standing alone satisfies the veracity.prong of the Aguilar-Spinelli standard.” Id. at 71. Only after so holding did the court go on to consider the significance of the police surveillance, which it found “lent credence to the informant and his statements.” Id. at 71. “(L]ending credence” to an informant is not the equivalent of “satisflying] the veracity prong.” Thus, the Court relied only in part on the surveillance to establish the veracity of the informant and did not hold that the observation of “known drug users” entering a multi-unit building was alone sufficient to satisfy the veracity prong.[1] See Rojas, 403 Mass. at 487 (“The affidavit [in Valdez] satisfied the veracity prong because the informant had been proven correct in his revelation of a particular fact. . . Additionally, the court relied, in part, on ‘police surveillance’ . . .”). See also Commonwealth v. Kennedy, 426 Mass. 703, 709-10 (1998) (citing Valdez, the Court stated, “[w]e have often recognized that a police officer’s knowledge of the reputation for drug use or drug dealing of persons interacting with a defendant, even though not sufficient alone, is a factor to support probable cause to arrest the defendant”). Accordingly, the observation by the affiant, over a seventy-two hour period during both the day and night time, that two known drug users entered the main door of Building 5 of the Pleasant View Housing Project and left within three to five minutes when the defendant may or may not have been present is not, on the facts of this case, sufficient to establish the veracity of the apparently anonymous confidential informant.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to suppress be and hereby is ALLOWED.

 Similarly, in Commonwealth v. Singer, 29 Mass.App.Ct. 708, 714-15 (1991), the affidavit stated not only that the police had personally observed individuals known to be involved in cocaine dealing enter the building under surveillance and leave within a few minutes, but also that the affiant saw the defendant engage in what he, an experienced narcotics investigator, believed to be a drug transaction. See also Commonwealth v. Hall, 366 Mass. 790, 798 n.9 (1975)(stating “our conclusion that the warrant was good for the second floor apartment would not change even if the surveillance evidence were excluded from consideration”).